**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- x

In re MACY'S, INC. SECURITIES        :
       LITIGATION                 :      Master File No. 1:07-cv-04774-AKH
                                    :
                                    :      ECF
                                    :
       This document relates to:        :
                                    :
       ALL ACTIONS.                :
                                    :
                                    :
                                    :

---------------------------------------------------------- x

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION**
**TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

Page

THE CONTEMPORANEOUS FALSITY ISSUE ....................................................... 1

    The Basic Point ................................................................................................. 1

    The Lowe Report ............................................................................................... 2

    February/March Sales ....................................................................................... 2

    The "Cutting Back" Statement .......................................................................... 5

THE SCIENTER ISSUE ........................................................................................... 7

    The *Tellabs* Decision ....................................................................................... 7

    Imputation ......................................................................................................... 8

    Personal Stock Sales – Vested Options ........................................................... 9

    Personal Stock Sales – Proportion and Pattern ............................................. 10

    The Stock Buyback ......................................................................................... 10

    Trades By Others ............................................................................................ 11

THE SAFE HARBOR ISSUE ................................................................................. 11

    Dual Test ......................................................................................................... 11

    Actual Knowledge .......................................................................................... 12

    Cautionary Language ...................................................................................... 12

CONCLUSION:  DISMISSAL WITH PREJUDICE ............................................. 13

CLI-1598669

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

## FEDERAL CASES

*380544 Canada, Inc. v. Aspen Technology, Inc.*, No. 07 Civ.
  1204(JFK), 2008 WL 731971 (S.D.N.Y. Mar. 18, 2008) ................................. 7

*Acito v. IMCERA Group, Inc.*,
  47 F.3d 47 (2d Cir. 1995) .......................................................... 10

*Confederate Mem'l Ass'n, Inc. v. Hines*,
  995 F.2d 295 (D.C. Cir. 1993) ...................................................... 13

*Copeland ex rel. NBTY, Inc. v. Rudolph*, No. 05-0561CV,
  160 Fed. Appx. 56, 2005 WL 3470292
  (2d Cir. Dec. 20, 2005) ............................................................. 13

*Cosmas v. Hassett*,
  886 F.2d 8 (2d Cir.1989) ........................................................... 8

*DeMarco v. Robertson Stephens Inc.*,
  318 F. Supp. 2d 110 (S.D.N.Y. 2004) ............................................... 6

*Halperin v. eBanker USA.com, Inc.*,
  295 F.3d 352 (2d Cir. 2002) ....................................................... 13

*In re BISYS Sec. Litig.*,
  397 F. Supp. 2d 430 (S.D.N.Y. 2005) .............................................. 2

*In re Bayou Hedge Fund Litig.*,
  534 F. Supp. 2d 405 (S.D.N.Y. 2007) ............................................ 7, 8

*In re eSpeed, Inc. Sec. Litig.*,
  457 F. Supp. 2d 266 (S.D.N.Y. 2006) .............................................. 10

*In re Nokia Oyj (Nokia Corp.) Sec. Litig.*,
  423 F. Supp. 2d 364 (S.D.N.Y. 2006) .............................................. 13

*In re Scholastic Corp. Sec. Litig.*,
  252 F.3d 63 (2d Cir. 2001) ......................................................... 1

*In re SeeBeyond Techs. Corp. Sec. Litig.*,
  266 F. Supp. 2d 1150 (C.D. Cal. 2003) ............................................ 12

## <u>TABLE OF AUTHORITIES</u>

Page(s)

### FEDERAL CASES
(Continued)

*In re Silicon Graphics Inc. Sec. Litig.*,
   183 F.3d 970 (9th Cir. 1999) ........................................................................ 9

*In re Yukos Oil Co. Sec. Litig.*, No. 04 Civ. 5243(WHP),
   2006 WL 3026024 (S.D.N.Y. Oct. 25, 2006) ................................................ 6

*Malin v. XL Capital Ltd.*,
   499 F. Supp. 2d 117 (D. Conn. 2007) ........................................................ 11

*Martin v. Dickson*, No. 03-7917, 100 Fed. Appx. 14,
   2004 WL 1205185 (2d Cir. June 2, 2004) .................................................. 13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   127 S. Ct. 2499 (2007) .................................................................................. 7

*White v. H&R Block, Inc.*, No. 02 Civ. 8965(MBM),
   2004 WL 1698628 (S.D.N.Y. July 28, 2004) ............................................... 6


### STATUTES and RULES

Fed. R. Civ. P. 7 ................................................................................................ 13

Fed. R. Civ. P. 15 .............................................................................................. 13


### MISCELLANEOUS

James Covert, *Federated Posts Profit Rise, Will Change Name to Macy's*,
   Wall St. J., Feb 28, 2007, at B3 .................................................................... 7

Sandra Jones, *Field Days Here for Macy's Rivals*, Chicago Tribune, Feb.
   28, 2007, at C1 ............................................................................................... 7

*Moody's Lowers Federated's Debt Rating One Notch*, Reuters News, Feb.
   27, 2007 .......................................................................................................... 7

CLI-1598669

Plaintiff's opposition to our motion to dismiss contains very little that was not already addressed in our opening brief. This reply, accordingly, makes just a few points worthy of highlighting.

The Contemporaneous Falsity Issue

We begin with plaintiff's failure to allege with particularity any alleged misstatement:

- <u>The Basic Point</u>. Plaintiff ignores our core argument: that the Complaint fails utterly to allege any particularized facts showing Macy's projections did not represent defendants' honest, best judgment about the outlook for the first quarter of 2007, or any facts contradicting defendants' statements in February 2007 that sales at the former May stores, while weak, were improving. (Def. Mem. at 10-16.)[1] Plaintiff interprets this point as a "demand[] that Plaintiff plead evidence which is not required," and it then proceeds to knock down that straw man. (Opp. Mem. at 11.) But we have not suggested the Complaint must plead a host of evidentiary detail in order to survive dismissal.[2] Our point is that its failure to specify *any* data supposedly in defendants' possession in February 2007 that contradicted their alleged statements at that time renders plaintiff's claims fatally deficient.[3]

---

[1] Our opening brief is referred to herein as "Def. Mem." Plaintiff's opposition brief is referred to as "Opp. Mem."

[2] The decision plaintiff cites for the proposition that pleading detailed evidentiary matter is not required, *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 72 (2d Cir. 2001), actually confirms that the Complaint fails to allege fraud with required particularity. That court noted that where, as here, a plaintiff contends that defendants had access to information contradicting their public statements, the complaint must "specify the internal reports [containing that information], who prepared them and when, how firm the numbers were or which company officers reviewed them." *Id.* The Complaint here does none of that.

[3] Plaintiff's failure to cite any internal information suggesting that Macy's first-quarter 2007 financial projections could not be achieved is all the more glaring given the Complaint's assertion that it relied on "interviews with former employees of Macy's." (Compl. at 1.) Courts have recognized that a plaintiff may rely on the statements of suitably described confidential witnesses in attempting to allege

- <u>The Lowe Report</u>. Plaintiff continues to assert that defendants knew Macy's rebranding efforts in the former May stores would hurt sales "because Macy's had hired a consultant [Lowe New York] who studied the matter and provided the Company with a report that concluded that the cessation of coupon promotions would cause a decline in sales." (Opp. Mem. at 12.) We addressed this argument extensively in our opening brief, demonstrating that the allegations regarding Lowe New York contain none of the details necessary to show defendants possessed information that was contrary to their statements. (Def. Mem. at 11-13.) The Complaint fails to allege, among other things, when the report was prepared or presented, to whom at Macy's it was presented, what factual data or information the report contained, any information by which to judge the definitiveness of any data in the report, or what if any assumptions were made in the report. Most importantly, and decisively, plaintiff says nothing about whether and to what extent the report was factored into Macy's thinking – such as by changing any plans or projections in response to the report. (*Id.*) Plaintiff apparently has no response to the argument, and therefore ignores it.

- <u>February/March Sales</u>. Plaintiffs partially ignore, and otherwise mangle, data and statements from the first two months of the class period.

  - ➤ <u>The "Admission"</u>. Plaintiff contends that falsity of defendants' statements in February 2007 is somehow established by defendants' supposed

---

(continued…)

fraud with particularity. *See, e.g.*, *In re BISYS Sec. Litig.*, 397 F. Supp. 2d 430, 442 (S.D.N.Y. 2005). Here, however, plaintiff attributes none of the Complaint's allegations to any former employees, much less any former employees identified as being in a position to have information that could contradict Macy's first-quarter 2007 projections. Apparently, not a single person whom plaintiff interviewed was able to point to any such information.

"admission" in May 2007 that "in February and March, the weakness was focused on the new Macy's or the former May doors [sic]."  (Opp. Mem. at 12 & n.7.)  But as we showed in our opening brief, Macy's disclosed numerous times in 2006 through February 2007 that sales at the former May stores were weak and lagging.  (Def. Mem. at 4-6, 13-16.)  That defendants acknowledged this fact again in May 2007 was nothing new.

➤ "Weak" _and_ "Improving".  Nowhere does plaintiff explain how defendants' quarter-end, retrospective characterization that sales had been weak back in February and March 2007 somehow establishes that Macy's first-quarter 2007 financial projections were knowingly unachievable when they were issued in February 2007 (much less that those projections did not already factor in weak sales at the former May stores).  Nor does plaintiff ever explain how a statement that sales were weak in February and March contradicts defendants' statements that sales at former May stores were weak but the trend was improving.  (Def. Mem. at 15.)  As we pointed out, sales can be weak and improving at the same time – another fact to which plaintiff closes its eyes.

➤ The Actual Data.  Plaintiff's attention to sales in February and March 2007 is misplaced in any event.  As the Complaint rightly acknowledges, same-store sales in those months had actually increased; those sales had missed projections for those months by very small amounts; and the figures had been a matter of public knowledge since right after each month-end, available for analysis and comparison to any other retailer.

-3-

(Compl. ¶¶ 30, 32; Def. Mem. at 6 n.5.)  It was not until April that Macy's

sales decreased across the board by 2.2% – during the same month that

sales unexpectedly decreased by a collective 2.3% across the entire retail

industry.  (Def. Mem. at 6-7, 10 & n.7.)  Clearly, the fact that Macy's

missed its first-quarter 2007 sales projections – by mere basis points, at

that – was due not to the sales performance of the former May stores in

February or March, but rather to poor sales across the board in April at

both former May stores and legacy Macy's stores – at a time when the

entire retail industry was afflicted by declining sales.  (*Id.* at 10 & n.7.)

And the fact that Macy's actually met its earnings projections for the

quarter (*id.* at 7) despite such a poor industry-wide showing in April

further demonstrates that Macy's financial projections for the quarter

could not have been knowingly unachievable.  Again, plaintiff nowhere

responds to this fundamental flaw in its Complaint.

➢    "Rebranding".  Plaintiff asserts that Macy's February 2007 statements

amounted to a representation that its "re-branding efforts were meeting

with success" (Opp. Mem. at 2), and that "the re-branding was beginning

to work and sales were trending positively" (*id.* at 14).  Macy's said no

such thing.

•    The challenged statements are Macy's first-quarter 2007 sales

projections and defendant Hoguet's statements on February 27,

2007 that sales at former May stores were weak but improving.

(*Id.* at 5-6.)  As we pointed out in our opening brief, none of these

-4-

statements commented on, much less affirmatively trumpeted success of, the rebranding of former May stores.  (Def. Mem. at 5-6, 16.)

- Far from asserting success, defendants actually told investors in February 2007 that the rebranding effort "has taken longer" than expected and "is probably the most challenging of all the issues we face," and that "retrain[ing] customers . . . can happen, and it is an objective worth pursuing."  (*Id.* at 14.)  Moreover, the transcript of Ms. Hoguet's February 27 analyst call makes clear that Ms. Hoguet never said that sales at the former May stores were going to trend positive.  Indeed, she expressly acknowledged having no answer to the question of when those sales would trend positive (*id.* at 15-16) – yet another inconvenient fact that plaintiff declines to address.

- The "Cutting Back" Statement.  Plaintiff concedes that the Complaint incorrectly alleges (in two places) that Ms. Hoguet stated on May 14, 2007 that "[b]y cutting back as hard as we did, we clearly hurt the business."  (Opp. Mem. at 8 n.5.) Bizarrely, however, plaintiff now claims that Ms. Hoguet made the statement on May 16 as opposed to May 14, while ignoring that the very news article on which plaintiff relies for the allegation expressly confirms that Ms. Hoguet made the statement on *March* 14.  (*Id.*; Def. Mem. at 7 n.6.)  Plaintiff further ignores that Ms. Hoguet made the statement at a forum – a Bank of America investors conference – that made it instantly available to the market.

-5-

> ➤ Plaintiff argues that, by raising the fact that Ms. Hoguet made her "cutting back" statement well before Macy's is alleged to have made any corrective disclosures, Macy's is attempting to assert a "truth-on-the-market" defense that is fact-specific and not appropriate for a motion to dismiss.  (Opp. Mem. at 8 n.5.)  Plaintiff is incorrect.  That defense applies when a defendant asserts that allegedly undisclosed information was already available to the market from a third-party source.  *See DeMarco v. Robertson Stephens Inc.*, 318 F. Supp. 2d 110, 121 (S.D.N.Y. 2004) (truth-on-the-market defense requires the defendant to "show that the public received accurate, 'corrective information' from an alternative source").  Here, however, the significance of Ms. Hoguet's statement on March 14 is that defendants *themselves* were saying all along that Macy's integration of former May stores was a challenge that could impact its performance in 2007 – *i.e.*, the Complaint fails to plead that defendants made any misstatements or omissions.  In any event, courts have not hesitated to dismiss a complaint under the "truth-on-the-market" doctrine where the fact allegedly omitted was actually widely disseminated to the market.[4]  Here, it is indisputable that the challenges associated with Macy's integration efforts had been widely disseminated and were known to the

---

[4] *See, e.g., In re Yukos Oil Co. Sec. Litig.*, No. 04 Civ. 5243(WHP), 2006 WL 3026024, at *22 (S.D.N.Y. Oct. 25, 2006) (dismissing plaintiff's claim for failing to disclose that a company executive was politically active in Russia where several newspapers had reported on the executive's political activities in that country); *White v. H&R Block, Inc.*, No. 02 Civ. 8965(MBM), 2004 WL 1698628, at *12 (S.D.N.Y. July 28, 2004) (dismissing plaintiffs' claims where "the facts here show that all the information plaintiffs claim was concealed by defendants was publicly available, and on these facts the law renders defendants' purported misstatements immaterial") (citation omitted).

-6-

market.  (*See* Def. Mem. at 5, 7 & n.6, 16 & n.9.)[5]  This puts the lie to

plaintiff's contention that any problems Macy's was having in February

2007 regarding its rollback of promotional activity at former May stores

were somehow "[u]nbeknownst to investors."  (Opp. Mem. at 1, 4.)

The Scienter Issue

Plaintiff's arguments regarding scienter are also fatally flawed:

- The *Tellabs* Decision.  Plaintiff begins by arguing that the Supreme Court's

    *Tellabs* decision "will have little practical effect on the determination of scienter

    in Second Circuit cases."  (*Id.* at 15.)  But there is no denying that *Tellabs*

    imposes a new obstacle that plaintiff must overcome in order to survive a motion

    to dismiss:  it requires the Court to consider "'plausible nonculpable explanations

    for the defendant's conduct,'" and conclude that "a reasonable person would

    deem the inference of scienter both 'cogent' and 'at least as likely as any plausible

    opposing inference.'"  *380544 Canada, Inc. v. Aspen Tech., Inc.*, No. 07 Civ.

    1204(JFK), 2008 WL 731971, at *15 (S.D.N.Y. Mar. 18, 2008) (quoting *Tellabs,*

    *Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2504-06, 2510, 2513

    (2007)).  Simply put, *Tellabs* made an already-heavy burden even heavier for

    plaintiff.  *See, e.g.*, *In re Bayou Hedge Fund Litig.*, 534 F. Supp. 2d 405, 415

---

[5] *See also* James Covert, *Federated Posts Profit Rise, Will Change Name to Macy's*, Wall St. J., Feb. 28, 2007, at B3 ("Federated said their integration is taking longer than expected"; "[a] problem has been weaning former May customers off coupons as Macy's moves to a nationwide promotion strategy"), attached as Exhibit AA to the Supplemental Declaration of Michael A. Platt ("Suppl. Platt Decl."); Sandra Jones, *Field Days Here for Macy's Rivals*, Chicago Tribune, Feb. 28, 2007, at C1 ("It's taking longer than expected to win over shoppers to the converted Macy's stores in the Midwest, Federated Department Stores Inc. executives acknowledged Tuesday"; "Federated executives said customers at the former May stores . . . are having trouble adjusting to the less-promotional environment of Macy's"), Suppl. Platt Decl. Ex. BB; *Moody's Lowers Federated's Debt Rating One Notch*, Reuters News, Feb. 27, 2007 ("The transition to Federated's less promotional pricing strategy has been more challenging than expected, Moody's said."), Suppl. Platt Decl. Ex. CC.

(S.D.N.Y. 2007) (after *Tellabs*, "a plaintiff pleading a § 10(b) violation based on defendant's recklessness faces two stiff challenges in this Circuit:  the strength of the recklessness allegations must be greater than that of allegations of garden-variety fraud, *and* the inference of recklessness must be at least as compelling as any opposing inferences").

• <u>Imputation</u>.  Plaintiff argues that defendants should be imputed to have knowledge "about the re-branding of the former May stores and the issues being encountered by those stores as the May acquisition was the most significant corporate event for the Company in its recent history."  (Opp. Mem. at 17.)  That argument fails.  Plaintiff never says whose knowledge should be imputed to defendants, or identifies anyone at Macy's – let alone the defendants themselves – who thought the first-quarter 2007 projections could not be achieved.  Also, it does not follow that, because the merger integration was important to Macy's, any shortfall in quarterly sales projections must necessarily have been known (or even knowable) in advance.[6]  As we discussed in our opening brief, the general rule is that company executives cannot be charged with knowledge of adverse information – assuming any existed – solely by virtue of their high-level positions.  (Def. Mem. at 19-20.)

_____

[6] Plaintiff relies on *Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir. 1989), in which the court held that directors of a company could be charged with "knowledge of [China's] import restrictions, since the restrictions apparently eliminated a potentially significant source of income for the company."  886 F.2d at 13.  There was no dispute in that case, however, that the import restrictions actually existed at the time the company made positive statements about its expected sales in China.  *Id.*  Here, by contrast, plaintiff has not pointed to any information showing that Macy's first-quarter sales projections were unachievable when issued.  Rather, plaintiff asks the Court simply to assume that such information existed in February 2007, and to impute knowledge of that hypothetical information to defendants.  Moreover, even if such information existed, it did not threaten a significant source of Macy's income.  Macy's missed its first-quarter 2007 sales projections by less than two percentage points, and actually met its projection for earnings per diluted share.  (Def. Mem. at 7, 9-10.)  And Macy's remains a profitable company even after that narrow miss in 2007's first quarter.  Simply put, *Cosmas* is inapposite here.

-8-

- <u>Personal Stock Sales – Vested Options</u>.  Plaintiff continues to insist that "Defendant Lundgren sold 57% of his stock holdings and Defendant Hoguet sold 47% of her stock holdings," while at the same time arguing that the Court should disregard defendants' vested stock options.  (Opp. Mem. at 2, 6, 18, 19-20.)  But that position is untenable, both as a matter of common sense and as a matter of law.  The 57% and 47% figures that plaintiff cites are an accounting fiction – they are accurate only during the fleeting moment between the Individual Defendants' exercise of vested options and their sale of the resulting shares.  For example, on March 2, 2007, Ms. Hoguet exercised 84,000 vested stock options and immediately sold the resulting 84,000 shares of Macy's common stock on the open market.  (Def. Mem. at 3 & n.3, 23, 25.)  Those two simultaneous transactions, however, had no impact on her common stock ownership – she owned 93,413 shares of Macy's common stock both on the day before and on the day after March 2, 2007.  (*Id.*)  Nonetheless, plaintiff would have the Court include the 84,000 shares in calculating the percentage of stock that Ms. Hoguet sold on March 2, but asks the Court to disregard the much larger pool of Ms. Hoguet's vested stock options, exercisable at any time, from which those 84,000 shares of common stock were acquired.  Courts have correctly recognized that such a result makes no sense.  *See, e.g.*, *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) ("we see no reason to distinguish vested stock options from shares because vested stock options can be converted easily to shares and sold immediately").  The Second Circuit clearly considers both shares and vested options when making a scienter determination.  (Def. Mem. at 22-24.)

*See, e.g.*, *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 54 (2d Cir. 1995) (sale of 11% of defendant's "shares and/or options" did not give rise to an inference of scienter).[7]

- <u>Personal Stock Sales – Proportion and Pattern</u>.  When vested options are considered, Macy's public SEC filings demonstrate that Mr. Lundgren and Ms. Hoguet sold only 10.99% and 13.85%, respectively, of their total Macy's holdings – well below the proportions that courts have considered suspicious.  (Def. Mem. at 22-24.)  Moreover, as we discussed extensively in our opening brief, the public filings also demonstrate that the Individual Defendants' challenged stock sales are entirely consistent with their prior trading history, and both individuals maintained or increased their substantial Macy's holdings during the class period. (Def. Mem. at 24-26.)  Those facts are fatal to plaintiff's scienter allegations, which likely explains why plaintiff ignores them entirely.  The far more compelling inference here is that the trades made by Mr. Lundgren and Ms. Hoguet during the class period were simply part of their consistent pattern of selling Macy's stock each February or March after exercising options that had one year to go before expiration.  (*Id.*)

- <u>The Stock Buyback</u>.  Plaintiff argues that Macy's buyback of shares supports an inference of scienter because "Defendants used corporate funds to prop up the price of Macy's stock so that they could sell in the market at inflated prices." (Opp. Mem. at 20.)  But the pleading record demonstrates that the Individual

---

[7] Plaintiff's claim that vested options should not be considered has been soundly rejected as contrary to Second Circuit precedent.  *See In re eSpeed, Inc. Sec. Litig.*, 457 F. Supp. 2d 266, 290 n.184 (S.D.N.Y. 2006) ("*Acito*'s holding directly contradicts" plaintiff's assertion that "'vested options are not shares' and should not be considered in determining whether an individual defendant sold a significant percentage of holdings").

Defendants did no such thing. Macy's stock buyback was authorized not by Mr. Lundgren or Ms. Hoguet, but by Macy's board of directors. (*See* 2/27/07 8-K, Platt Decl. Ex. V.) And as we pointed out in our opening brief, the buyback authorization would have been utterly inconsistent with any contemporaneous belief on the part of the directors that Macy's stock price was artificially inflated. (Def. Mem. at 25.)

- Trades By Others. Plaintiff also challenges the stock trades of various other Macy's officers and directors. (Opp. Mem. at 6, 18.) But none of those individuals has been named as a defendant in this action, and plaintiff never explains how those alleged trades could support a finding of scienter on the part of Mr. Lundgren or Ms. Hoguet. Moreover, absent any allegations providing the context in which those other individuals supposedly sold their Macy's stock – such as their prior trading history and percentage of holdings sold – the Complaint simply fails to adequately allege that those sales were unusual or suspicious in any way. (Def. Mem. at 21-22, 27 n.13.)[8]

<u>The Safe Harbor Issue</u>

Nor is there any merit to plaintiff's assertion that the PSLRA's safe harbor for forward-looking statements and the bespeaks-caution doctrine do not apply here:

- Dual Test. The PSLRA provides that, when the issue is forward-looking statements, the plaintiff can succeed only by proving, after first pleading with

---

[8] *See, e.g.*, *Malin v. XL Capital Ltd.*, 499 F. Supp. 2d 117, 151 (D. Conn. 2007) (merely setting forth the "number of shares each executive sold, the share price on the date sold, and the gross profit realized from each sale" makes it "impossible . . . to determine whether the sales were 'unusual in timing or amount'"; "Plaintiffs fail to provide evidence of Defendants' prior sales of [company] stock, which, if similar to the pattern of sales during the class period, could undermine any inference of fraud arising from them").

-11-

particularity, *both* of the following:  first, actual knowledge of falsity on the part of the speaker; and second, absence of satisfactory cautionary language.  *See In re SeeBeyond Techs. Corp. Sec. Litig.*, 266 F. Supp. 2d 1150, 1164 (C.D. Cal. 2003) ("the[] two prongs of the safe harbor provision are taken to be independent, alternative means by which a defendant may insulate itself from liability").  Failure of successful attack as to either one leaves plaintiff without a viable claim.

- <u>Actual Knowledge</u>.  Plaintiff asserts "Defendants knew that the statements [the financial projections] were false and misleading at the time they were made." (Opp. Mem. at 21.)  But, as noted above, the Complaint offers no properly compliant allegation at all that defendants knew, or had reason to know, at the time this forward looking material was issued that the projections could not be achieved.

- <u>Cautionary Language</u>.  Plaintiff characterizes Macy's cautionary language as consisting of "mere boilerplate warnings."  (Opp. Mem. at 22.)  Not so.  The central claim in this action is that Macy's financial projections were incorrect because "the re-branding of the former May Stores was not being well received and was causing a substantial slow-down in sales and would negatively impact the Company's same-store sales figures."  (*Id.* at 6.)  Macy's cautionary language spoke directly to that risk:  "[T]here can be no assurance that the Company's execution of its post-merger strategy to rebrand May stores will improve its operating performance," and "[t]he failure of the Company to realize the benefits expected to result from the May acquisition could have a material adverse effect on the Company's business and results of operations."  (Def. Mem. at 30.)   No

-12-

reasonable investor could have read that cautionary language and "have been misled into thinking that the risk that [allegedly] materialized and resulted in his loss" – *i.e.*, that Macy's rebranding efforts could result in decreased sales – "did not actually exist." *Halperin v. eBanker USA.com, Inc.*, 295 F.3d 352, 359 (2d Cir. 2002); *see also In re Nokia Oyj (Nokia Corp.) Sec. Litig.*, 423 F. Supp. 2d 364, 401 (S.D.N.Y. 2006) ("cautionary language is not mere boilerplate [where] it directly relates to the risks that ultimately are alleged to have, in part, brought about Plaintiffs' losses").

<u>Conclusion:  Dismissal With Prejudice</u>

Which brings us to one final point concerning dismissal of plaintiff's Complaint.  We respectfully submit that the dismissal should be *with prejudice*.  Plaintiff has not filed a motion to amend, and has not proffered a further amended pleading, much less one that would pass muster.  The law does not require, or countenance, deference to plaintiff's informal tail-end, footnote request.  (Opp. Mem. at 24 n.11.)[9]  Plaintiff has already had one opportunity to amend the complaint (after consolidation), and in any event it offers not the slightest suggestion of a cure for any of the numerous deficiencies we have identified.

---

[9] *See Copeland ex rel. NBTY, Inc. v. Rudolph*, No. 05-0561CV, 160 Fed. Appx. 56, 59, 2005 WL 3470292, at *2 (2d Cir. Dec. 20, 2005) ("it is within the district court's discretion to deny leave to amend . . . when leave is requested informally in a brief filed in opposition to a motion to dismiss") (internal quotations omitted); *Martin v. Dickson*, No. 03-7917, 100 Fed. Appx. 14, 16, 2004 WL 1205185, at *2 (2d Cir. June 2, 2004) ("because [plaintiff] did not formally request leave to amend, and because he has not indicated that he will be able to properly state a cause of action in an amended complaint, leave to amend is denied"); *Confederate Mem'l Ass'n, Inc. v. Hines*, 995 F.2d 295, 299 (D.C. Cir. 1993) ("a bare request in an opposition to a motion to dismiss – without any indication of the particular grounds on which amendment is sought, *cf.* Fed. R. Civ. P. 7(b) – does not constitute a motion within the contemplation of Rule 15(a)").

-13-

Dated:  April 7, 2008                          Respectfully submitted,


                                               *s/ John M. Newman, Jr.*
                                               John M. Newman, Jr. (JN-5426)
                                               Geoffrey J. Ritts (GR-4270)
                                               Michael A. Platt (MP-7423)
                                               JONES DAY
                                               North Point
                                               901 Lakeside Avenue
                                               Cleveland, Ohio  44114
                                               Telephone:  (216) 586-3939
                                               Facsimile:  (216) 579-0212
                                               jmnewman@jonesday.com
                                               gjritts@jonesday.com
                                               maplatt@jonesday.com

                                               Arthur J. Margulies (AM-7777)
                                               JONES DAY
                                               222 East 41st Street
                                               New York, New York  10017-6702
                                               Telephone: (212) 326-3939
                                               Facsimile: (212) 755-7306
                                               ajmargulies@jonesday.com

                                               *Attorneys for Macy's, Inc, Terry J. Lundgren, and*
                                               *Karen M. Hoguet*

-14-

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 7, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the  email addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

*s/ John M. Newman, Jr.*
John M. Newman, Jr. (JN-5426)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
jmnewman@jonesday.com

CLI-1598669

# Mailing Information for a Case 1:07-cv-04774-AKH

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Mario Alba , Jr**
  malba@csgrr.com,e_file_ny@csgrr.com,drosenfeld@csgrr.com

- **Ashley H. Kim**
  ashley@spornlaw.com

- **Arthur J. Margulies**
  ajmargulies@jonesday.com,dpjacobson@jonesday.com

- **John M. Newman , Jr**
  jmnewman@jonesday.com

- **John M. Newman , Jr**
  jmnewman@jonesday.com

- **Michael Alan Platt**
  maplatt@jonesday.com,pgarver@jonesday.com

- **Geoffrey J. Ritts**
  gjritts@jonesday.com

- **David Avi Rosenfeld**
  drosenfeld@csgrr.com,e_file_ny@csgrr.com,amartin@csgrr.com

- **Samuel Howard Rudman**
  srudman@csgrr.com,e_file_ny@csgrr.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)